# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT A. BAUTISTA,** | : | **No. 3:11cv1611** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **MARY E. SABOL, WARDEN,** | : | |
| **YORK COUNTY PRISON;** | : | |
| **THE DEPARTMENT OF HOMELAND** | : | |
| **SECURITY, IMMIGRATION AND** | : | |
| **CUSTOMS ENFORCEMENT;** | : | |
| **JANET NAPOLITANO; THOMAS** | : | |
| **DECKER; DAVID CLARK and** | : | |
| **JOHN MORTON,** | : | |
| **Respondents** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Robert A. Bautista's (hereinafter "petitioner") "Emergency Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241(c)(3)." The matter has been fully briefed and is ripe for disposition.

**Background**

Petitioner is a citizen of the Dominican Republic. He first entered the United States as a Lawful Permanent Resident in 1984 when he was approximately ten years old. (Doc. 1, Emergency Pet. at 1). He was born in the Dominican Republic in August 1974. (Id.) He lived in the Bronx, New York, with his family, and he attended elementary school and high school in the United States. (Id.) He eventually married Yenny Bautista, a Lawful Permanent Resident, and moved with her to the Allentown,

Pennsylvania area where he started a transmission repair business.  (Id.) Petitioner has three children all of whom are younger than thirteen years of age.  (Id.)

Petitioner, however, has a criminal record.  Authorities in Bergen County, New Jersey cited him for violating the "Forged Writing" provision of New Jersey's Criminal Code.  (Id. at 7).  The court sentenced him to one year of probation after a guilty plea.  (Id.)  Additionally, the Supreme Court of New York for Bronx County convicted petitioner of Attempted Arson in the Third Degree in 2003.  (Id.)  The court sentenced petitioner to five years of probation, which he successfully completed.  (Id.)[1]

Petitioner made two trips to the Dominican Republic in 2009.  (Id.) After the first trip, he re-entered the United States with no problem.  (Id.) After his second trip, however, Customs and Border Patrol officials stopped him at the airport and detained him.  Ultimately, they released him with "Deferred Inspection" status, which means that authorities would decide at a later date if he was entitled to enter the country.  (Id.)  Authorities subsequently directed him to report to the Philadelphia Airport for inspection on March 5, 2010 .  Petitioner went for the inspection, and immigration authorities have detained him ever since.  (Id.)

Based on the foregoing, petitioner filed the instant petition raising the following causes of action: 1) violation of the Immigration and Nationality Act (hereinafter "INA") - mandatory detention of a non-citizen who is taken into immigration custody when released from criminal custody for a

---

[1] Petitioner indicates that the Forged Writing charge stemmed from being caught with a fake identification and that the Attempted Arson charge arose when police found petitioner next to his own vehicle with a gas tank in his hand.  (Doc. 1, Pet. at 6 - 7).

conviction that does not subject him to mandatory detention; 2) violation of INA - mandatory detention of non-citizen who has a substantial challenge to removal; 3) violation of INA - prolonged detention beyond the time reasonably necessary to conclude removal proceedings; 4) violation of INA - prolonged detention in the absence of a hearing where the government bears the burden of showing that such prolonged detention is justified; 5) violation of the Due Process Clause of the Fifth Amendment  - prolonged detention that bears no reasonable relation to its purpose; 6) violation of the Due Process Clause of the Fifth Amendment - prolonged detention without a constitutionally adequate hearing where the government bears the burden of showing that such detention is justified; and 7) violation of the Excessive Bail Clause of the Eighth Amendment.  (Doc. 1, Emergency Petition for a Writ of Habeas Corpus, at 42 - 48).   Thus the first four causes of action are based upon the INA, specifically 8 U.S.C. § 1226©), and the remaining three causes of action are based upon the United States Constitution.

     Petitioner asks the court to grant the writ of habeas corpus and either order his immediate release from custody under reasonable conditions of supervision, or in the alternative, order a constitutionally adequate hearing where the government must demonstrate that his continued detention is justified. (Id. at 49, Prayer for Relief).

     Petitioner requested that the court order the respondents to show cause, within two days of the filing of the petition as to why the writ of habeas corpus should not be granted, and to have a hearing within five days of the government's response. (Id. ¶ c).   The court ordered the Clerk of Court to serve the petition on the government, and ordered a response

from the government within seven days.  (Doc. 2, Order of Aug. 24, 2011). The order further allowed the petitioner to file a reply within five days of the filing of the government's response.  (Id.)  The court deferred ruling on whether oral argument or a hearing would be held.  (Id.)   Subsequently, on August 31, 2011, the government sought a brief extension of time to file its response in order to obtain and review the petitioner's administrative file. (Doc. 3).   The court granted the request and ordered that the response be filed by September 12, 2011.  (Doc. 4, Order of Sept. 1, 2011).

On September 3, 2011, petitioner filed a motion the he titled an "Emergency Motion for an Immediate Individualized Bond Hearing Before an Impartial Court."  (Doc. 6).  The court denied the motion on September 8, 2011, indicating that the petition for a writ of habeas corpus was on an expedited briefing schedule and that the court needed to review the government's response to the petition to make a reasoned decision.  (Doc. 9, Order of Sept. 8, 2011).

The government filed a timely response to the original petition on September 12, 2011.  (Doc. 13).  The petitioner did not file a reply to the response and the time for such flng has passed.  Accordingly, the matter is ripe for disposition.

**Jurisdiction**

We have jurisdiction over this petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."); see also Zadvydas v. Davis, 533 U.S. 678 (2001) .

**Discussion**

Four of the causes of action asserted by the petitioner are premised on the assertion that he is detained pursuant to 8 U.S.C. § 1226(c)(1), which provides in pertinent part:

> The Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title . . . when the alien is released without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Petitioner argues that this section provides that the government must take a criminal alien into custody at the time "when" he is released from custody.  In the instant case, petitioner was released from custody years before immigration officials detained him, therefore, his current detention is improper.

The respondents argue, however, that they did not detain petitioner pursuant to section 1226(c)(1) but rather pursuant to 8 U.S.C. § 1225(b)(2)(A), which applies to aliens seeking admission to the country.  In particular, this statutory section provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."[2]

We must therefore, determine under which statutory section the petitioner is detained.  Petitioner held the immigration status of "Lawful Permanent Resident" immediately prior to his immigration problems.  At the time, he resided in the United States, but had taken a trip to the Dominican Republic where his is a citizen.  On September 13, 2009, he returned to the United States and immigration authorities stopped him at the John F.

---

[2]Section 1229a explains removal proceedings.

Kennedy International Airport Terminal in New York City, New York. (Doc. 1 at 7). The officials questioned him and then released him with "Deferred Inspection" status. (Id.) Thus, the immigration authorities did not make a final determination at the airport regarding his admissibility. Immigration authorities directed petitioner to travel to the Customs and Border Patrol's Office in Philadelphia, Pennsylvania on March 5, 2010 for the completion of his entry "inspection." (Id. at 8). The Department of Homeland Security detained him for removal proceedings based upon his criminal convictions. He has been detained ever since. The government asserts that authority for his detention is 8 U.S.C. § 1225(b)(2)(A).

Section 1225 provides for mandatory detention of an alien where the examining immigration official determines that the alien seeking admission is not clearly and beyond a doubt entitled to be admitted. After a careful review, we are in agreement with the government that the petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A).

It is undisputed that petitioner is not a citizen of the United States, but rather he is a "lawful permanent resident." A "lawful permanent resident" is an "immigrant." 8 C.F.R. § 1.1(p) ("The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal."). An immigrant is an "alien" as defined by 8 U.S.C. § 1101(a)(15). Where an alien lawfully admitted for permanent residence in the United States "has committed an offense identified in [8 U.S.C.] § 1182(a)(2)" he is considered as an alien "seeking

6

an admission into the United States for purposes of the immigration laws[.]" 8 U.S.C. § 1101(a)(13)(C)(v).  Section 1182 describes certain crimes, including crimes involving moral turpitude or an attempt to commit such a crime.  8 U.S.C. § 1182(a)(2)(A)(i)(I).

More particularly, when, as in this case, a lawful permanent resident leaves the country and then seeks to re-enter, the law generally does not treat him as an alien "seeking admission."  If, however, he falls within one of six enumerated exceptions, he is considered an alien "seeking admission." 8 U.S.C. § 1101(a)(13); Tineo v. Ashcroft, 350 F.3d 382, 390 (3d Cir. 2003).  One of those exceptions is where the alien "committed an offense identified in section 1182(a)[.]" Because of petitioner's criminal record, the government treated him as an alien seeking admission and ultimately detained him for further removal proceedings.  See Tineo v. Ashcroft, 350 F.3d 382 (3d Cir. 2003) (holding that a lawful permanent alien loses his status and becomes an alien seeking admission when he falls into one of six subsections of the law, one of those subsections being the commission of a crime of moral turpitude or attempt to commit such a crime).

Section 1226©), on the other hand, applies to the government taking criminal aliens into custody when they are released from prison.  In the instant case, the government did not treat petitioner as a criminal alien who needed to be taken into custody when released from prison.  After he left the country and tried to re-enter, the government treated him as an alien seeking admission, based on his criminal convictions.  Petitioner is thus detained pursuant to 8 U.S.C. § 1225 not § 1226(c).  In other words, § 1226(c) is inapplicable to the petitioner's case.  Petitioner's first, second,

7

third and fourth causes of action are all brought under 8 U.S.C. § 1226(c). These causes of action will be dismissed because 8 U.S.C. § 1226(c) is not the basis for the petitioner's detention.

The only causes of action that remain are the petitioner's constitutional claims. Respondent claims that petitioner has not exhausted his administrative remedies with respect to these claims and therefore they should be dismissed. We agree.

Where a petitioner fails to exhaust available administrative remedies habeas corpus relief is not available in federal court. Yi v. Maugans, 24 F.3d 500, 503-04 (3d Cir. 1994). Petitioner argues that the law imposes no duty of exhaustion except where an alien seeks review of a final order of removal. We disagree. See, e.g., Okonkwo v. INS, 69 Fed. App'x 57, 59 (3d Cir. 2003) (indicating that an alien who may be eligible for parole, but does not seek parole, has not exhausted his administrative remedies). Here petitioner has not sought parole, which is an available administrative remedy for an alien in his position.

The law provides as follows:

> Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of such alien shall only be considered in accordance with § 212.5(b) of this chapter. This paragraph shall also apply to any alien who arrived before April 1, 1997, and who was placed in exclusion proceedings.

8 C.F.R. § 235.3©).

Section 212.5(b) provides for release through parole of aliens "on a case-by case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of

8

absconding ..." 8 C.F.R. § 212.5(b).  Thus, petitioner may be eligible to apply for bail in the instant case.  Failure to do so deprives this court of jurisdiction over his claim.

     For the foregoing reasons, the instant petition for a writ of habeas corpus will be denied.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT A. BAUTISTA,** | : | No. 3:11cv1611 |
| **Petitioner** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **MARY E. SABOL, WARDEN,** | : | |
| **YORK COUNTY PRISON;** | : | |
| **THE DEPARTMENT OF HOMELAND** | : | |
| **SECURITY, IMMIGRATION AND** | : | |
| **CUSTOMS ENFORCEMENT;** | : | |
| **JANET NAPOLITANO; THOMAS** | : | |
| **DECKER; DAVID CLARK and** | : | |
| **JOHN MORTON,** | : | |
| **Respondents** | : | |

## ORDER

**AND NOW**, to wit, this 24th day of October 2011, Robert A. Bautista's "Emergency Petition For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241(c)(3)" (Doc. 1) is hereby **DENIED**. The Clerk of Court is directed to close this case.

                                              **BY THE COURT:**

                                              **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**